UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEON WISE, DIN 00-A-3332,

                                        Plaintiff,

                                                        Case # 13-CV-6417-FPG

v.
                                                        DECISION AND ORDER

PAUL DAUGHERTY, Nurse
Practitioner, and
JOANNE M. NOWINSKI, R.N.,

                                        Defendants.

## INTRODUCTION

*Pro se* Plaintiff Leon Wise ("Wise") brings this action under 42 U.S.C. § 1983, alleging that his Constitutional rights were violated while he was an inmate at the Livingston Correctional Facility ("Livingston") in Sonyea, New York. ECF No. 1 at 1. Wise claims that Defendants Paul Daugherty ("Daugherty") and Joanne M. Nowinski ("Nowinski"), both nurses at Livingston, were deliberately indifferent to his medical needs in violation of the Eighth Amendment when they failed to properly diagnose and treat a stroke Wise claims he suffered on August 22, 2012. *Id.* at 5. Daugherty and Nowinski have moved for summary judgment pursuant to Fed. R. Civ. P. 56, and because there are no facts to demonstrate that Daugherty or Nowinski were deliberately indifferent to any of Wise's serious medical needs, their Motion for Summary Judgment (ECF No. 10) is GRANTED and this case is dismissed with prejudice.

## FACTUAL BACKGROUND[1]

Wise commenced this *pro se* action against Daugherty and Nowinski[2] on August 9, 2013, ECF No. 1, and seeks monetary damages for "permanent pain and impairment" he claims to have

---

[1] Except as otherwise noted, the following facts are undisputed. Because Wise is the non-moving party, I recite and view all facts in the light most favorable to him.

suffered as a result of Daugherty and Nowinski's failure to provide him with adequate medical care on August 22, 2012. *Id.* at 6.

At all relevant times, Wise was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). ECF No. 1 at 1. Daugherty and Nowinski were employed by DOCCS at Livingston while Wise was housed at that facility. *Id.* at 5. Daugherty is a registered nurse practitioner ("N.P.") and has been employed by DOCCS and the New York State Office of Mental Health since 1994. ECF No. 10-5 at 1. Nowinski is a registered nurse and as of August 2014 had been employed by DOCCS for at least three years. ECF No. 10-4 at 1.

The Complaint alleges that Daugherty and Nowinski failed to properly respond to a stroke Wise claims he suffered in August 2012. ECF No. 1 at 5. Wise claims that on August 22, 2012, Nowinski and Daugherty were "negligent and deliberately indifferent in providing [. . .] adequate medical care in the course of a medical emergency." *Id.* Wise alleges that on that date he "suffered a stroke" while he was "in the dorm area." *Id.* He claims that Daugherty and Nowinski violated his rights under the Eighth Amendment when they deprived him of "proper medical care by refusing [him] treatment," did not "properly access the emergency," and failed to "make a professional and adequate diagnosis" of what he claims was a stroke. *Id.*

Wise expounds on his allegations regarding this medical episode in an Inmate Grievance Complaint that he prepared on September 19, 2012, which he attached to his Complaint. *Id.* at 8. Wise claims that when he initially presented to prison medical staff on August 22, 2012, he had "a slur" and his "left hand wouldn't work right." *Id.* According to Wise, he was "checked out, given an aspirin, and sent back to [his] housing unit." *Id.* When "another of the same incident

---

[2] Wise also included former DOCCS Commissioner Brian Fischer who was dismissed from this case by Decision and Order dated March 26, 2014, since the Complaint did not allege Fischer's personal involvement in the alleged Constitutional deprivation. *See* ECF No. 6.

happened" one week later, Wise was sent to Erie County Medical Center ("ECMC") in Buffalo, New York for treatment of a "possible stroke." *Id.* According to Wise, Daugherty and Nowinski's inadequate treatment on August 22, 2012 was the cause of this "subsequent stroke," which he claims "could have been prevented" if not for Daugherty and Nowinski's failure to properly care for him during the August 22, 2012 incident. *Id.*

Daugherty and Nowinski filed their Motion for Summary Judgment on August 4, 2014, ECF No. 10, and provided Wise with a Notice to *Pro Se* Litigant Opposing Summary Judgment pursuant to Local Rule 56(b)[3], as well as a statement of material facts not in dispute pursuant to Fed. R. Civ. P. 56 and Local Rule 56(a)(1). *See* ECF Nos. 10-1, 10-2.

Daugherty and Nowinski argue that Wise's allegations amount to, at worst, negligence or medical malpractice, both of which are not actionable under 42 U.S.C. § 1983. ECF No. 10-3 at 8-9. They claim that Wise was examined "several times on August 22, 2012 and in the days thereafter." ECF No. 10-2 at ¶ 13. During these observations, Wise "did not present with any symptoms of a stroke." *Id.* Wise's medical records show that during the August 22, 2012 exam, Wise's facial symmetry was equal, his pupils were equal and reacted to light, his grip was strong and equal, and his speech was clear and coherent. ECF No. 10-4, Exhibit A at 2. Wise told Daugherty that he felt dehydrated and did not drink enough water that day, and Daugherty then "instructed [Wise] on the importance of adequate fluid intake." *Id.* Livingston medical staff observed Wise during daily "sick call" on each of the two days following the August 22, 2012 episode. ECF No. 10-2 at ¶ 40-50. Wise showed "no signs of a stroke" during these follow-up observations. *Id.* at ¶ 45.

---

[3] Formerly Local Rule 56.2.

Daugherty and Nowinski also contend that Wise did not suffer a stroke a week later, on August 28, 2012, but a similar episode called a trans ischemic attack ("TIA").[4]  *Id.* at ¶ 12. Livingston medical staff observed Wise during an emergency sick call on August 28, 2012.  ECF No. 10-4, Exhibit A at 4.   This time, Wise complained of weakness in his left side, and Daugherty noted slurred speech and weakness in Wise's left hand grips.  *Id.*  After assessing his condition, Daugherty had Wise taken to ECMC by ambulance.  ECF No. 10-2 at ¶ 56.  Medical staff provided aspirin to Wise for what they believed to be a TIA, which Daugherty explains is "like a stroke" but "causes no permanent damage" because a TIA does not involve bleeding in the brain.  ECF No. 10-5 at ¶¶ 55-56.

Wise was admitted to ECMC on August 31, 2012.  ECF No. 10-2 at ¶ 62.  Susan Elrich, M.D., observed Wise at ECMC and found that he likely suffered two TIA's in the week before his admission.  ECF No. 10-4, Exhibit A at 50.  Elrich did not find that Wise had suffered a stroke.  *Id.*  Wise was discharged from ECMC on September 7, 2012.  *Id.* at 41.  Wise's medical records note that Livingston officials contacted Wise's treatment providers at ECMC to keep abreast of his condition during his stay at the hospital.  *See* ECF No. 10-4, Exhibit A at 5. Medical records also demonstrate that Livingston staff continued to treat and provide necessary medications for Wise's various ailments in the months following his return to the facility, even authorizing a second transfer to ECMC on September 11, 2012 when Wise's condition warranted a higher level of care.  ECF No. 10-2 at ¶¶ 72-92.

Wise filed his opposition to Daugherty and Nowinski's summary judgment motion on September 9, 2014.  ECF No. 12.  Wise's Response claims that his medical records were "doctored" to "fit [Daugherty and Nowinski's] story," and that on August 22, 2012, "N.P.

---

[4] Wise disputes this diagnosis and includes in his opposition papers a mostly unattributed "Affirmation" on the medical science of strokes.  ECF No. 12 at 5-8.  As will be explained below, the question of whether Wise suffered a stroke, TIA, or other medical emergency does not create a triable issue of fact in this case.

Daugherty misdiagnosed me." ECF No. 12, at 3, 4. Though Wise accuses Daugherty and Nowinski of "perjury and mis-leading (sic) the" Court, he does not point to any specific fact about which they were allegedly untruthful. *Id.* at 4. Wise's Response also attached a three-page, mostly unattributed "Affirmation" purporting to offer medical background on strokes, TIA's, and accompanying symptoms that appears to be copied from a medical reference publication. *Id.* at 6-8. Wise acknowledges that Daugherty and Nowinski provided him medical treatment and diagnosed his condition on August 22, 2012, but claims the diagnosis was improper and the treatment was offered negligently, and that the Court should therefore deny the summary judgment motion. ECF No. 12 at 9, 11.

DISCUSSION

I.     Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Duse v. Int'l Bus. Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying portions of the record which the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he mere existence of *some* allegedly factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986) (emphasis in original).   Accordingly, the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

While all factual ambiguities must be resolved in favor of the nonmoving party, "the nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).   A court deciding a summary judgment motion thus "cannot try issues of fact; it can only determine whether there are issues to be tried." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36-37 (2d Cir. 1994) (quoting *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987)).

Under Fed. R. Civ. P. 56(e)(2), the Court may consider a fact undisputed for purposes of summary judgment when a party fails to properly address the opposing party's assertion of fact. In accordance with this requirement, Local Rule of Civil Procedure 56(a)(2) provides that:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

A *pro se* plaintiff's claims, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   Courts must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"

6

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  However, a *pro se* party's "bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Collins v. Gruen*, No. 12-CV-6022-FPG, 2014 WL 4923586, at *6 (W.D.N.Y. Sept. 30, 2014) (quotation and citation omitted).

Because of the specific rules that pertain to summary judgment motions, the Second Circuit requires that a *pro se* party facing a summary judgment motion must have "notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirement of Rule 56." *Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d. Cir. 2001).  Local Rule 56(b) implements the *Irby* requirement, and requires that:

> Any party moving for summary judgment against a *pro se* litigant shall file and serve with the motion papers a "Notice to *Pro Se* Litigant Regarding Rule 56 Motion For Summary Judgment" in the form provided by the Court.  Failure to file and serve the form notice shall result in denial of the motion, without prejudice to proper renewal.  Where the *pro se* party is not the plaintiff, the movant shall amend the form notice as necessary to reflect that fact.

In this case, Wise, as a *pro se* Plaintiff, was duly notified of these requirements, as Daugherty and Nowinski's filed summary judgment motion contains the required *Irby* notice. *See* ECF No. 10-1.

## II.   42 U.S.C. § 1983

Wise brings his medical indifference claims against Daugherty and Nowinski under 42 U.S.C. § 1983.  Though not itself a source of any substantive rights, § 1983 is a vehicle by which citizens may seek to vindicate rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 270 (1994).  "[T]o state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights." *Alfaro Motors, Inc. v.*

7

*Ward*, 814 F.2d 883, 887 (2d Cir. 1987).  Allegations that amount to "nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983."  *Id.* "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  It is well settled that a valid § 1983 claim must contain "some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

III.     Deliberate Medical Indifference

. The Eighth Amendment protects prison inmates from being subjected to "cruel and unusual punishment." U.S. CONST. amend. VIII.  Punishment that amounts to the "unnecessary and wanton infliction of pain" upon a prisoner violates the Eighth Amendment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  The Constitutional prohibition against cruel and unusual punishment "imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  An inmate seeking to hold prison officials liable for inadequate medical treatment must prove that the officials acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 104.

Deliberate indifference to an inmate's serious medical needs has both objective and subjective components. *Salahuddin,* 467 F.3d at 281.  Objectively, the alleged deprivation must be "sufficiently serious in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted).  The objective element requires a court to determine whether the inmate was actually deprived of adequate medical care in a manner that is sufficiently serious

to have caused harm to the inmate. *Salahuddin*, 467 F.3d at 279-80. Such an objective deprivation of medical treatment can be shown by prison officials' unnecessary delay or interruption of medical care for a prisoner. *See Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

The subjective component of deliberate indifference requires that a defendant prison official have "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent when the official "knows of and disregards an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. Deliberate indifference requires: (1) that the prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm [to the inmate] exists," and (2) that the official actually draw the inference. *Id.*

Prison officials' "inadvertent failure to provide adequate medical care" or claims that prison medical staff were "negligent in diagnosing or treating a medical condition" do not amount to deliberate indifference. *Atkins v. Coughlin*, 101 F.3d 1393 (2d Cir. 1996) (unpublished) (quoting *Estelle*, 429 U.S. at 105-06). As the Supreme Court has held, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Nor does "[m]edical malpractice [. . .] become a constitutional violation merely because the victim is a prisoner." *Id.* In other words, an inmate's disagreement with the type of medical care he receives is insufficient to state an Eighth Amendment claim. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Instead, "[t]he essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Absent a showing of unnecessary and wanton infliction of pain, the proper remedy for an inmate aggrieved by the medical treatment he receives during his incarceration is an action in state court for medical malpractice. *Hathaway*, 37 F.3d at 69.

9

Construing Wise's allegations to raise the strongest arguments they suggest, he claims that Daugherty and Nowinski were deliberately indifferent to his serious medical needs when they failed to properly diagnose and treat what Wise claims was a stroke. The essence of Wise's Complaint is that Daugherty and Nowinski "failed to make a professional and adequate diagnosis" of the health episode Wise suffered on August 22, 2012, and that purported misdiagnosis "caused a subsequent stroke which could have been prevented if not for the [. . .] actions of [Daugherty and Nowinski]." ECF No. 1 at 5.

There is no dispute that Wise complained that he was experiencing pain on August 22, 2012 and as a result, Daugherty and Nowinski observed and provided care for him. ECF No. 10-4, Exhibit A at 1; ECF No. 12 at 4. In responding to the present summary judgment motion, Wise makes a blanket denial of 21 specific paragraphs[5] of Daugherty and Nowinski's Statement of Material facts "in their entirety." ECF No. 12 at 1. Putting aside the impropriety of such a blanket, Wise does *not* deny the facts contained within paragraphs 13 and 16.

Paragraph 13 states that "Mr. Wise was examined several times on August 22, 2012 and in the days thereafter, and he did not present with any symptoms of a stroke or of a transient ischemic attack. Daugherty Decl. ¶ 12; Nowinski Decl. ¶ 12." ECF No. 10-2. Further, paragraph 16 states that "[a]t no time did defendants or any of the medical staff at Livingston Correctional Facility deny Mr. Wise medical treatment or ignore Mr. Wise's medical conditions. Daugherty Decl. ¶ 15; Nowinski Decl. ¶ 15." *Id.* Since Wise has not disputed these facts, they are deemed admitted in accordance with Local Rule 56(a)(2).

Consistent with these now admitted facts, Wise's medical records show that Daugherty and Nowinski examined Wise on August 22, 2012 and provided him with a course of care.

---

[5] Specifically, Wise denied the facts listed in paragraphs 11, 12, 14, 15, 18, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 37. ECF No. 12 at 1.

Daugherty and Nowinski noted that Wise's facial symmetry was equal, his pupils were equal and reacted to light, his grip was strong and equal, and his speech was clear and coherent. ECF No. 10-4, Exhibit A at 2. Wise told Daugherty that he felt dehydrated and that he did not drink enough water that day, and Daugherty instructed Wise about the importance of proper hydration. *Id.* Far from showing an objectively serious deprivation of medical care, this conduct by Daugherty and Nowinski in observing, diagnosing, and providing medical treatment to Wise in response to his complaints demonstrates that they provided Wise with care that is Constitutionally adequate.

Wise does not cite to any evidence in admissible form that would counter or call into question the treatment provided by Daugherty and Nowinski on August 22, 2012. Instead, Wise argues that he was misdiagnosed, and adds his supposition that he later suffered a stroke. However, even if proven, these claims do not establish deliberate indifference. Rather, they sound in either negligence or a disagreement regarding the course of medical care, both of which are not cognizable under either § 1983 or the Eighth Amendment. *See Smith v. Carpenter*, 316 F.3d 178, 194 (2d Cir. 2003) (negligent medical care does not support a section 1983 claim); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (disagreement with prison officials about what constitutes appropriate care does not state a claim under the Eighth Amendment).

While Wise protests that he suffered a stroke on August 22, 2012 and Daugherty and Nowinski, supported by Wise's medical records, insist that he did not, this dispute is simply not material to the allegation that Daugherty or Nowinski were purportedly indifferent to Wise's medical needs. It is not the mere existence of any disputed fact, but only a dispute as to a *material* fact that will defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248. Here, whether Wise suffered a stroke, a TIA, dehydration, or some other ailment is immaterial for purposes of this motion. That Daugherty and Nowinski observed, treated, and diagnosed Wise

on August 22, 2012 is not in dispute, and in conducting a detailed examination of Wise on August 22, 2012 and advising him on a course of care, Daugherty and Nowinski fulfilled their Eighth Amendment duty to provide adequate medical care to Wise.

Viewing the facts in the light most favorable to Wise, there is also no evidence that Daugherty or Nowinski acted with "a sufficiently culpable state of mind." *See Farmer*, 511 U.S. at 834. Wise has failed to produce or point to any evidence in admissible form to show that Daugherty and Nowinski knew of, and disregarded, any of his serious medical needs. On the contrary, the record indicates that Daugherty and Nowinski and their colleagues at Livingston attended to Wise's medical needs and on two occasions facilitated a transfer to ECMC when his condition required a higher level of care. *See* ECF No. 10-2 at ¶¶ 64, 74. Wise's unsupported and unspecific claims that Daugherty and Nowinski somehow committed perjury in their pleadings or that his medical records have been doctored are simply insufficient to raise a triable issue of fact in this case.

Wise has failed to establish any facts that would demonstrate that Daugherty and Nowinski were deliberately indifferent to his medical needs, and instead, he presents facts that, even if proven, amount only to a disagreement about his treatment or a potential misdiagnosis. As such, the record conclusively establishes that Daugherty and Nowinski provided Wise with constitutionally adequate medical care, and they are therefore entitled to judgment as a matter of law.

CONCLUSION

For all of the foregoing reasons, Daugherty and Nowinski's Motion for Summary Judgment (ECF No. 10) is GRANTED and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in

good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Any request to proceed *in forma pauperis* on appeal should be directed by motion to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to terminate this action.

IT IS SO ORDERED.

DATED:      July 9, 2015
            Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court